

**SIGNED this 29th day of September, 2017**

_Shelley D. Rucker_
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

In re:                                                      Case No. 1:14-BK-13504-SDR

JOSEPH C. CAWOOD,                                           Chapter 13

       Debtor;

JOSEPH C. CAWOOD,

       Plaintiff,

v.
                                   Adversary Proceeding
                                   Case No. 1:15-AP-1116-SDR

SETERUS, INC.,
SUNTRUST MORTGAGE, INC.,
RCO LEGAL P.C., FKA RCO LEGAL P.S.,
PRIORITY TRUSTEE SERVICES
OF TN, LLC, AND FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

       Defendants.

*Appearances for the Plaintiff*

> **Debtor**
> Richard L. Banks
> Richard Banks & Associates, P.C.
> 393 Broad Street NW
> Cleveland, TN 37311

*Appearances for the Defendants*

> **Seterus, Inc., and Federal National Mortgage Association**
> Carrie Meade Hartfield
> Bradley Arant Boult Cummings LLP
> One Federal Place
> 1819 Fifth Avenue North
> Birmingham, AL 35203
>
> Austin L. McMullen
> Bradley Arant Boult Cummings LLP
> 1600 Division Street, Suite 700
> Nashville, TN 37203
>
> J. Douglas Minor
> Bradley Arant Boult Cummings, LLP
> 188 Capitol Street, Suite 400
> Jackson, MS 39201

# MEMORANDUM OPINION

On August 11, 2015, Joseph C. Cawood ("Plaintiff," "Debtor," or "Mr. Cawood"), filed this adversary proceeding against defendants Seterus, Inc. ("Seterus"), SunTrust Mortgage, Inc. ("SunTrust"), RCO Legal P.C. ("RCO"), Priority Trustee Services of TN, LLC ("Priority"), and Federal National Mortgage Association ("FNMA"). [Doc. No. 1].[1] On June 10, 2016, Plaintiff amended his complaint to seek class action relief against Seterus and FNMA for "willfully and systematically failing to implement and use appropriate business and accounting practices relating to Chapter 13 debtors after those individuals successfully completed their respective

---

[1] All docket references are to this adversary proceeding unless otherwise indicated.

Chapter 13 cases and who have home mortgages owned by Fannie Mae and serviced by Seterus." [Doc. No. 108, at 2]. Plaintiff's Amended Complaint contains six claims for relief: (1) an objection to the claim filed by Seterus in the amount of $72,455.06 and a request pursuant to Federal Rule of Bankruptcy Procedure 7001(2) to determine the validity and amount of the lien; (2) breach of contract; (3) intentional and/or negligent misrepresentation; (4) negligence; (5) failure to credit payments upon receipt in violation of 15 U.S.C. § 1639f; and (6) violation of the Fair Debt Collections Practices Act ("FDCPA"). [*Id.* at 21-25]. Plaintiff seeks to have the court order FNMA to amend its claim to reflect an accurate accounting of the amount due and seeks to recover actual, statutory, and punitive damages as well as attorney's fees and expenses. [*Id.* at 25-26].

On July 8, 2016, Seterus and FNMA (collectively "Defendants") respectively filed motions to dismiss. [Doc. Nos. 121-122]. On September 20, 2016, the court heard oral argument on the motions to dismiss.

Seterus argues for dismissal on the following grounds:

1. The Amended Complaint fails to establish this court's subject matter jurisdiction over Plaintiff's claims. Plaintiff's claims are attempts to enforce a discharge injunction, and the appropriate court to enforce the injunction is the court that issued it. In this case that would be the United States Bankruptcy Court for the Southern District of Texas, where Plaintiff previously completed a chapter 13 case.

2. If this court has jurisdiction, the Amended Complaint fails to state valid claims against Seterus.

a. Count 1 fails to state a claim for relief under Federal Rule of Bankruptcy Procedure 7001(2).

b. Counts 2 through 4 are preempted by the Bankruptcy Code.

3.   The Truth in Lending claim in Count 5 fails to satisfy the minimum pleading standards of Federal Rule of Civil Procedure 8(a) because Plaintiff has not made any allegations regarding a failure to credit payments.

4. The class action claims are independently subject to dismissal because this court cannot enforce a discharge injunction issued by another bankruptcy court.

FNMA argues for dismissal on the basis that there are no factual allegations of its misconduct. To the extent that the court finds that the allegations are alleged against FNMA, it adopts the arguments of Seterus.

## I.    Factual Allegations

Plaintiff's Amended Complaint alleges that he and his then wife bought a home in Cleveland, Tennessee, in 2004. [Doc. No. 108, at ¶ 19]. They financed the purchase through SunTrust and secured the loan with a mortgage on the home. [*Id*. at ¶ 19]. The loan was made August 3, 2004, in the original principal amount of $86,000. [*Id*. at ¶ 23].  It was secured by a Deed of Trust recorded in Bradley County, Tennessee. [*Id*.].

After moving to Texas, Mr. Cawood fell behind on his payments in 2008. [*Id.* at ¶ 19]. The loan went into default, and SunTrust instituted a foreclosure. To stop the foreclosure, the Cawoods filed chapter 13 bankruptcy on May 12, 2008, in the United States Bankruptcy Court for the Southern District of Texas, *In re Cawood*, Case No. 08-80227. [*Id.* at ¶¶ 10, 24]. The court will refer to this proceeding as the "Texas Case." The Cawoods completed the Texas Case on May 31, 2013. [*Id.* at ¶ 25]. On June 4, 2013, the Texas Case trustee filed a "Notice of Final Cure Payment and Motion to Deem the Mortgage Current and Direct Debtor to Begin Making

Direct Payments to SunTrust Bank." [*Id.* at ¶ 26]. The motion was granted.[2] [*Id.* at ¶ 36]. Mr. Cawood received a discharge in the Texas Case on July 8, 2013. [*Id.* at ¶ 29].

Mr. Cawood resumed making payments on his mortgage. [*Id.* at ¶¶ 19, 27]. Specifically, on June 11, 2013, he sent SunTrust a payment of $668.78. [*Id.* at ¶ 27]. On July 6, 2013, he sent SunTrust a second payment of $668.78. [*Id.* at ¶ 28]. On August, 2, 2013, he sent SunTrust a third payment of $680.45. [*Id.* at ¶ 30]. On September 6, 2013, he sent SunTrust a fourth payment of $680.45. [*Id.* at ¶ 31].

In October 2013, SunTrust transferred his mortgage to mortgage servicer Seterus. [*Id.* at ¶ 20]. That transfer was reflected as recorded in the Office of the Register of Deeds for Bradley County, Tennessee, on November 4, 2013, by a Corporate Assignment of the Deed of Trust. [*Id.* at ¶ 35]. The assignment states that the servicing of the loan was transferred to Seterus as successor by merger to SunTrust Mortgage, Inc. [*Id.*]. Mr. Cawood received a letter from Seterus dated October 14, 2013. [*Id.* at ¶ 32]. The letter notified him that Seterus was now the servicer of his loan on behalf of FNMA and that his loan had a principal balance of $74,479.14, unpaid interest of $2,591.62, and an escrow overdraft of $745.33. [*Id.* at ¶ 32]. The letter also returned the September payment that Mr. Cawood had made. [*Id.* at ¶ 32].

Despite this notification, on October 3, 2013, Mr. Cawood sent Seterus a fifth post discharge payment of $680.45. [*Id.* at ¶ 33]. On October 30, 2013, Mr. Cawood sent Seterus a sixth payment of $680.45. [*Id.* at ¶ 34]. Around this time, Mr. Cawood also proceeded to obtain counsel. [*Id.* at ¶ 36]. In November, his attorney sent Seterus a letter along with a copy of the

---

[2] The Amended Complaint does not specifically allege that the order was entered. However, the Amended Complaint does include a reference to an order deeming the mortgage current and a reference to a violation of "Orders of the Bankruptcy Court." [Doc. No. 108, at ¶¶ 36, 84]. The court will grant Plaintiff the reasonable inference that the order was entered. *See Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996) (noting that when a court considers a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "[a]ll allegations must be construed in the light most favorable to the plaintiff.").

order deeming the loan current from the Texas Case. [*Id.*].  He also resent the September

payment. [*Id.*]. On November 12, 2013, Mr. Cawood sent Seterus a seventh payment of $680.45.

[*Id.* at ¶ 37].

Seterus responded to Mr. Cawood's November correspondence by first sending him a

letter dated November 14, 2013, congratulating him on having been chosen to participate in a

trial period plan for the FNMA modification program and requesting additional documents. [*Id.*

at ¶ 38]. Then, on November 25th, Mr. Cawood received an account summary from Seterus

dated November 18th, showing a principal balance of $74,047.35 and an interest rate of 6%. [*Id.*

at ¶ 39].

On December 9, 2013, Mr. Cawood sent an eighth payment of $680.45. [*Id.* at ¶ 42]. That

same day, Mr. Cawood received a letter from Seterus dated December 3, 2013, stating that his

loan was in default and that $4,149.23 was due by January 7, 2014. [*Id.* at ¶ 40]. Mr. Cawood

received a letter from Seterus dated December 5, 2013, with an escrow account statement

showing a shortage of $554.89. [*Id.* at ¶ 41]. Seterus offered to spread that shortage over sixty

installments and include the escrow payment with his maintenance payment if Mr. Cawood sent

payment within thirty days. [*Id.*]. Seterus also stated that the new payment amount would be

$675.28. [*Id.*]. The December 5th letter was followed by a December 13th letter from Seterus

providing an escrow account statement showing the payment amount to be $684.53. [*Id.* at ¶ 43].

In the latter half of December 2013, Seterus asked Mr. Cawood twice for documentation

needed in order to "review the foreclosure proceedings." [*Id.* at ¶¶ 45-46]. Seterus acknowledged

receipt of the December payment but informed Mr. Cawood that his loan was still in default. [*Id.*

at ¶ 44].

Another account summary from Seterus arrived on January 2, 2014. [*Id.* at ¶ 47]. The current principal balance of Mr. Cawood's loan had increased to $73,901.98. [*Id.*].  On January 8, 2014, Mr. Cawood sent a ninth payment for $680.45 by money order No. 21499993372. [*Id.* at ¶ 48]. Seterus acknowledged receipt of the payment but informed Mr. Cawood that it still considered the loan in default. [*Id.* at ¶ 49].

On February 10, 2014, Mr. Cawood sent a tenth payment of $675.28 by money order No. 20996182225. [*Id.* at ¶ 51]. Seterus did not send an acknowledgment of receipt of the February payment. [*Id.*].  On March 1, 2014, Mr. Cawood received a letter from Seterus demanding that $4,030.03 be paid by March 30, 2014. [*Id.* at ¶ 52]. On March 12, Mr. Cawood sent an eleventh payment of $675.45 for March by money order No. 21499991638. [*Id.* at ¶ 53]. Seterus acknowledged receipt of the payment on March 17, 2014, but stated that the loan was still in default. [*Id.* at ¶ 54]. On April 15, 2014, Mr. Cawood sent Seterus a twelfth payment of $675.45 for April by money order No. 21652927018. [*Id.* at ¶ 55]. On April 18, 2014, Seterus acknowledged receipt of the payment but stated that the loan remained in default. [*Id.* at ¶ 56].

Seterus sent Mr. Cawood a letter dated April 29, 2014, informing him that his loan had been turned over to RCO Legal for foreclosure. [*Id.* at ¶ 59]. The letter further stated, "Unless you notify us within thirty (30) days after receipt of this letter that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid.  If you notify us in writing of a dispute, we will obtain verification of the debt and mail it to you." [*Id.*]. The letter went on to say, "We may commence the foreclosure action without waiting thirty (30) days, if so requested by our client." [*Id.*]. The letter also stated, "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account." [*Id.*]. On May 20, 2014, Mr. Cawood's

attorney responded, stating that the mortgage amount of $73,313.19 was disputed and that the foreclosure would be in violation of the orders entered in the Texas Case. [*Id.* at ¶61].

From May through August 2014, there was a flurry of activity in which Mr. Cawood sent payments to Seterus, Seterus returned payments to Mr. Cawood, whereupon Mr. Cawood resent the payments, and Seterus re-returned the payments as shown on the chart below.

| Money Order No. | Payment Amount | Date sent to Seterus | Date Returned to Cawood |
|---|---|---|---|
| 21652935311 (May Payment) | $675.28 | Sent 5/7/2014 (¶57) or 5/14/14 (¶58)<br><br>Resent 6/4/14 (¶63)<br><br>Resent 6/25/14 (¶67)<br><br>Resent 7/15/14 (¶74) or 7/17/14(¶76)<br><br>Resent 7/29/14 (¶83) | 5/19/14 (¶63)<br>6/17/14 (¶66)<br>No return date alleged<br><br>No return date alleged<br><br>7/22/14(¶79) or 7/23/14(¶80)<br><br>8/6/14 (¶88) |
| 21652936986 (June Payment) | $675.28 | Sent 6/11/14 (¶64)<br>Resent 6/30/14 (¶68)<br>No resent date alleged<br>No resent date alleged<br>Resent  8/7/14 (¶89) | 6/22/14 (¶68)<br>7/8/14 (¶71)<br>7/22/14(¶79)<br>7/29/14(¶82)<br>8/13/14(¶91) |
| 21652941993 (July Payment) | $675.28 | Sent Date not alleged/ money order dated 7/12/14(¶84)<br>Resent 7/30/14 (¶84) | 7/21/14 (¶77)<br><br>8/13/14(¶91) |

During this same period, Mr. Cawood's attorney told Seterus and its counsel that they needed to check their records from the Texas Case and stop the foreclosure. In June, July, and August, Seterus responded that the issue was under investigation and that a written explanation would be provided.[3] [*Id.* at ¶¶ 63, 65, 67, 69-70, 74-76, 83-85, 87, 89, 92-93].

On July 11, 2014, Priority Trustee Services informed Mr. Cawood that a foreclosure on his home was scheduled for August 14, 2014. [*Id.* at ¶ 73]. On July 22, 2014, Seterus supplied an explanation which stated that, "[a]lthough all Bankruptcy payment plan payments may have been received on time and the loan may have been current according to the terms of the Bankruptcy payment plan, the funds received may not have been sufficient to bring the loan to a contractually current status." [*Id.* at ¶ 79].

Unable to stop the foreclosure, Mr. Cawood refiled for chapter 13 relief in this court on August 12, 2014. [Case No. 1:14-bk-13504-SDR, Doc. No. 1; *id.* at ¶ 90]. A letter stating that the foreclosure had been postponed arrived on September 9, 2014. [*Id.* at ¶ 94]. The letter informed Mr. Cawood that Seterus "was still in the process of adjusting the loan to reflect the correct contractual status pursuant to the bankruptcy court orders" and that a payment of $675.28 had been received and applied to the loan on August 20, 2014. [*Id.* at ¶ 94].

After Mr. Cawood filed bankruptcy in this court, Seterus filed an objection to confirmation in the case claiming that the plan failed to provide for its arrearage in excess of $7,000. [*Id.* at ¶ 97].

By November 2014, Cawood had lost 20 pounds as a direct result of the stress related to trying to save his home.  [*Id.* at ¶ 22].

---

[3] Seterus also sent one letter stating that it was in the process of reviewing the issue post-petition on August 19, 2014. [*Id.* at ¶ 93].

## II.    Jurisdiction

This case and all related proceedings have been referred to this court for decision

pursuant to 28 U.S.C. § 157(a) and the Standing Order of the United States District Court,

Eastern District of Tennessee, entered July 18, 1984.  Pursuant to Federal Rule of Bankruptcy

Procedure 3007(b), an objection to claim may be included in an adversary proceeding. Venue is

appropriate in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

As a preliminary matter, Seterus and FNMA have challenged whether this court has

subject matter jurisdiction over the issues in this adversary proceeding. That determination

depends on whether Plaintiff's alleged causes of action represent a disguised attempt to enforce

the discharge injunction entered in the Texas Case or whether they are Plaintiff's efforts to be

compensated for damages arising from violations of state and federal nonbankruptcy law

committed by one or more of the Defendants.

Seterus does not dispute that this court has personal jurisdiction over it as a result of its

participation in the chapter 13 case. [Doc. No. 134, at 3]. Rather, it argues that this court lacks

subject matter jurisdiction to hear Plaintiff's claims because only the court that issued an order of

discharge may punish the violation of that injunction. The court agrees with that premise;

however, before determining that it cannot enforce the discharge injunction, the court must first

determine whether the debt that Seterus was pursuing on behalf of FNMA was a discharged debt

to which the injunction imposed by 11 U.S.C. § 524 even applies.

### *A. Were the acts of Seterus and FNMA efforts to recover a discharged debt?*

11 U.S.C. § 524 provides that:

(a) A discharge in a case under this title –
    (2) Operates as an injunction against the commencement or continuation of an action,
    the employment of process or an act, to collect, recover or offset any such

[discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2). This provision "embodies the 'fresh start' concept inherent in the Bankruptcy Code by allowing the debtor to begin anew with a debt-free start and without pressure from creditors to repay discharged debts." *In re Lafferty*, 229 B.R. 707, 712 (N.D. Ohio 1998) (citations omitted).  The injunction bars post-discharge lawsuits that seek to collect discharged debts. *Id.* at 712-13.

Seterus contends that, although "[t]he phrase 'discharge injunction' is conspicuously absent from the Amended Complaint," all of "Plaintiff's claims are premised on the alleged violation of the Texas bankruptcy court's discharge injunction." [Doc. No. 121-1, at 4]. Seterus cites a number of cases holding that a bankruptcy court "has no authority to enforce the discharge injunction issued by another bankruptcy court." *Id.* (citing *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1329) (S.D. Fla. 2014); *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d. 958, 970 (11th Cir. 2012); *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985); *Pereira v. First North Am. Nat'l Bank*, 223 B.R. 28, 30 (N.D. Ga. 1998)).

Plaintiff counters that his Amended Complaint does not seek to enforce any order of the bankruptcy court in Texas. [Doc. No. 131, at 2]. Indeed, he notes that there was no discharge of the long-term debt owed by him to SunTrust. [Doc. No. 133, at 5]. Rather, he contends that he is alleging various state and federal nonbankruptcy law claims wholly separate from any discharge injunction imposed by 11 U.S.C. § 524(a)(2).

The issue of whether alleged post-discharge collection actions by a mortgage holder are violations of a discharge injunction was addressed in this district in the case of *Perry v. EMC Mortgage Corporation ( In re Perry)*, 388 B.R. 330 (Bankr. E.D. Tenn. 2008). In that case, the defaults under the mortgage note had been cured through a chapter 13 plan. *Id.* at 333-34. A few

11

months after the discharge was granted, the creditor began foreclosure proceedings. *Id.* at 334.

The debtor brought a contempt action for violation of the discharge order in the court where his

chapter 13 case had been pending. *Id.* The court held that the discharge injunction only protected

the debtor from acts to collect a discharged debt. *Id.* at 336. Because the long-term mortgage had

been excepted from discharge under 11 U.S.C. § 1328, that debt was not covered by the

discharge injunction. *Id.* at 336. With the discharge injunction inapplicable, the court found that

it lacked subject matter jurisdiction over any post-discharge dispute over the debtor's mortgage

obligations. *Id.* at 338.  As explained by the court in *Perry*:

> With respect to this adversary proceeding, the court finds that it does not possess subject matter jurisdiction to adjudicate this post-discharge dispute between these parties. The Debtor paid out her Plan according to its terms, resulting in the payment of all prepetition and postpetition arrearages owed to the Defendant prior to the entry of the Discharge Order, and she received her discharge, which expressly excludes her ongoing mortgage obligation owed to the Defendant.  Because this obligation was not included within her discharge, the discharge injunction of § 524(a)(2) has no application. Furthermore, because the complained of default occurred post-discharge and post-termination of the automatic stay, the dispute between the Debtor and the Defendant did not arise under title 11, nor is it related to the Debtor's bankruptcy case. Any post-bankruptcy issues concerning an alleged default upon the Debtor's ongoing mortgage obligation are subject to the jurisdiction of the state court, not the bankruptcy court.

*Id.*

The Defendants do not address *Perry's* holding that a debt that was not discharged does

not give rise to a discharge injunction violation. They contend that the court that presided over

the Texas Case is the only court with jurisdiction to hear Plaintiff's complaint and that even then

Mr. Cawood's claims would be limited to contempt for enforcement of the Texas court's orders.

Based on *Perry*, this court disagrees. Moreover, the court also believes that if this matter had

been brought in the United States Bankruptcy Court for the Southern District of Texas, as the

Defendants suggest it must be, that the Texas court would apply similar reasoning and likely dismiss a claim for violation of the discharge injunction.

In fact, in a case very similar to this one, the United States Bankruptcy Court for the Southern District of Texas addressed whether a debtor could raise a discharge violation with respect to a mortgage loan that had been brought current through a completed chapter 13 plan. *See Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez),* 421 B.R. 356, 366 (Bankr. S.D. Tex. 2009). In *In re Rodriguez*, the debtor brought a claim for violation of section 524 in the same court where his chapter 13 case had been pending. In a prior opinion in the same bankruptcy case involving the creditor's motion to dismiss for lack of subject matter jurisdiction, the court found that neither the principal nor the unpaid interest on the mortgage loan had been discharged. It also found the "Reimbursable Expenses" which included escrow amounts, attorney's fees, and other charges required to be reimbursed by the debtor were also included as part of the claim that could not be discharged or modified except by payment. *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 441-42 (Bankr. S.D. Texas 2008). At that time, the court deferred ruling on jurisdiction, but stated that it "[did] not presently understand how [the] allegations fall within the discharge injunction itself." *Id.* at 455.

In a subsequent opinion the following year, the *Rodriguez* court granted Countrywide's motion for summary judgment on the basis that its collection actions did not violate the discharge injunction. *Rodriguez*, 421 B.R. at 366. In reaching these conclusions, the court carefully walked through the treatment of mortgages in chapter 13.

> Read in concert with § 1322(a)(2), §§ 1322(b)(5) and 1328(a)(1) bar the discharge of home mortgage debts. Section 1322(a)(5) enables debtors to keep their homes by curing arrearages and maintaining plan payments. It provides the "continuing right" to maintain a mortgage account. *Mendoza,* 111 F.3d at 1269. But § 1328(a)(1) explicitly provides that arrearages are not discharged. Further, § 1322(a)(2) bars the chapter 13 plan from modifying the mortgage contract, except

> to bring debtors current under their contract. The debtor has no power to alter, reduce or eliminate the mortgage debt except by making mortgage payments. Therefore, unless the mortgage debt is fully paid under the plan, the debtor must continue to make monthly payments according to the mortgage contract after the debtor has completed the chapter 13 plan.

*Id.* at 365 (footnotes omitted).

Mr. Rodriguez had returned to the court from which he had received his discharge for relief to stop a foreclosure on a mortgage he believed he had cured, yet, he found that he had no cause of action under 11 U.S.C. § 524.

Based on the foregoing, the court finds that this case does not involve a discharge injunction violation.[4] The home mortgage loan was not discharged in Plaintiff's prior bankruptcy. Accordingly, the court finds the case law cited by the Defendants requiring enforcement of the discharge injunction in the court that issued the injunction to be inapplicable. Whatever claims Plaintiff may have, they are not for violation of the discharge injunction under section 524(a)(2), and, therefore, FNMA's and Seterus' objections to the court's jurisdiction on that basis are without merit.

### B. Does the court have jurisdiction over Plaintiff's claims?

Even if Plaintiff's claims are not based on section 524, the court must still consider whether it has jurisdiction to hear the claims he has alleged. Pursuant to 28 U.S.C. § 1334, "the

---

[4] The court's conclusion that Plaintiff's causes of action are not based on violations of the discharge injunction is based also on the fact that Plaintiff has not alleged that the Defendants failed to credit payments received pursuant to the confirmed plan in the Texas Case. Nor has Seterus or FNMA argued that 11 U.S.C. § 524(i) is applicable to this case. Section 524(i) provides that an act of a creditor to collect a debt remaining after a discharge because of a failure to credit payments as provided for in a plan is deemed to be a violation of the discharge injunction. Courts construing this section have applied it in situations where a debtor successfully completed a chapter 13 case, but a long-term home mortgage creditor refused to acknowledge that the loan was current and continued to pursue the claim. *See, e.g., Ridley v. M&T Bank (In re Ridley)*, 2017 WL 2372283 (Bankr. E.D. Okla. May 31, 2017); *Pompa v. Wells Fargo Home Mortg., Inc. (In re Pompa)*, 2012 WL 2571156 (Bankr. S.D. Tex. June 29, 2012); *Mattox v. Wells Fargo, (In re Mattox)*, 2011 WL 3626762 (Bankr. E.D. Ky. Aug. 17, 2011). Section 524(i) contains a number of factual predicates that must be shown before the court can determine whether it applies and the creditor's action is deemed to be a violation. The court presumes that the parties did not raise this section because either they do not have sufficient information to know whether it is applicable or they have the information and have decided for either factual or strategic reasons not to raise it.

district courts shall have original but not exclusive jurisdiction of all civil proceedings arising

under title 11, or arising in or related to cases under title 11." The district court may refer these

cases to the bankruptcy court where the bankruptcy judge is granted authority to "hear and

determine all cases under Title 11 and all core proceedings under title 11." 28 U.S.C. § 157(a)-

(b)(1). A core proceeding is one that "either invokes a substantive right created by federal

bankruptcy law or one which could not exist outside of bankruptcy." *In re Lowenbraun*, 453 F.3d

314 (6th Cir. 2006). The term "core proceeding" is not defined, but Section 157(b)(2) provides a

non-exhaustive list of "core proceedings."  In core proceedings, the bankruptcy court may enter

appropriate orders and judgments, subject to review under 28 U.S.C. § 158.  28 U.S.C. §

157(b)(1). Section 157(c)(1) allows a bankruptcy judge to hear a proceeding that is not a core

proceeding but is otherwise "related to" a case under title 11. 28 U.S.C. § 157(c)(1). In these

cases, in which the matter is deemed "non-core," the bankruptcy judge is required to submit

proposed findings of fact and conclusions of law to the district court for entry of a final order or

judgment. *Id.*  If all of the parties consent, the bankruptcy judge may hear and determine the case

and enter a final order and judgment subject to review under 28 U.S.C. § 158. 28 U.S.C. §

157(c)(2).

Only one of Plaintiff's six causes of action is created by federal bankruptcy law. The

other causes of action arise from events that occurred prior to the filing of this bankruptcy

petition and are based on state law or federal nonbankruptcy law. Nevertheless, any recoveries

from those causes of action are assets of Plaintiff's bankruptcy estate in this case. 11 U.S.C. §

541(a)(1) (The "estate is comprised of … all legal and equitable interests of the debtor in

property as of the commencement of the case."); 11 U.S.C. § 1306(a)(1) ("Property of the estate

includes, in addition to the property specified in section 541 of this title—(1) all property of the

kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed dismissed or converted. . . .").

Plaintiff's first cause of action is an objection to the proof of claim filed by Seterus on behalf of FNMA and a request for a determination of the "validity, extent, or priority of the lien" of FNMA. [Doc. No. 108, at 21]. An objection to a claim is a matter arising in a bankruptcy case and is a core proceeding which this court may hear and determine. 28 U.S.C. §§ 1334(b) and 157(b)(2)(B). A determination of the validity, extent, or priority of a lien is also a core proceeding. 28 U.S.C. § 157(b)(2)(K). Seterus concedes that the court has jurisdiction over an objection to a claim but disputes that Plaintiff can show that his cause of action concerns the validity or priority of a lien. Seterus is correct on those two bases of lien litigation. Plaintiff has not requested avoidance or subordination of FNMA's lien. However, Seterus does not address the fact that Plaintiff is seeking to determine the extent of the lien. Plaintiff argues that the amount of the claim is directly related to the extent of the lien. The court agrees with Plaintiff and, therefore, finds that his effort to obtain a determination of the amount of the lien falls squarely within that category of core proceedings and that this court has subject matter jurisdiction to determine the amount of the claim and the extent of the lien.

Counts 2 through 6 brought by Plaintiff do not expressly arise under title 11 or in a case under title 11. The claims are stated as violations of state contract and tort law and federal nonbankruptcy law for which Plaintiff is pursuing damages and injunctive relief.[5] In order for the court to find that it has subject matter jurisdiction, it must determine whether these causes of action are "related to" Plaintiff's current bankruptcy case. As the Sixth Circuit Court of Appeals has noted, claims that arise under state law may be related to the bankruptcy case.

---

[5] Plaintiff has also argued that the allegations supporting Counts 2 through 6, if shown to be a nationwide practice, may indicate an abuse of the bankruptcy process. The court does not decide at this time whether such a showing would create an issue arising under title 11.

> A claim is "related to" a bankruptcy case if the "outcome of that [claim] could
> conceivably have any effect on the estate being administered in bankruptcy."
> *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn.*
> *(In re Dow Corning Corp.),* 86 F.3d 482, 489 (6th Cir. 1996) (quoting *Pacor, Inc.*
> *v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)). Each of Stone's claims will have
> an effect on his estate here. His disallowance claims challenge the validity
> of debts that Waldman has sought to enforce in bankruptcy. And a damages award
> on Stone's affirmative claims would provide assets for his other creditors. *See*
> *Celotex Corp. v. Edwards,* 514 U.S. 300, 307 n.5, 115 S. Ct. 1493, 131 L. Ed. 2d
> 403 (1995) ("related to" jurisdiction includes causes of action owned by the
> debtor that become property of the estate). Thus, the federal courts have
> jurisdiction over all of Stone's claims notwithstanding their state-law basis.

*Waldman v. Stone*, 698 F.3d 910, 916 (6th Cir. 2012). The same logic would apply to the claims asserted by Plaintiff in this case.

Under this definition, Plaintiff's claims will have an effect on what must be paid on Seterus' claim because they are in the nature of counterclaims. If Plaintiff is successful, the damages will augment his bankruptcy estate and a determination of whether he is in default will affect his rights in bankruptcy.

The Defendants argue that a damages award will not affect the administration of the estate because there is only one other relatively small creditor. They cite no authority requiring a minimum number or size of debts for "related to" jurisdiction. Even if Plaintiff is likely to be the primary beneficiary of any award, providing a 100% payment to the other creditor and a reduction in Plaintiff's mortgage debt can certainly qualify as having an effect on his bankruptcy estate. The Sixth Circuit's test is not whether the proceeding has a *significant* effect on the administration of the estate but whether it has *any* effect on the administration of the estate. *See Waldman*, 698 F.3d at 916. The court finds that Counts 2 through 6 are related to Plaintiff's bankruptcy case, and the court, therefore, has subject matter jurisdiction to hear them.

### C. Does this court have jurisdiction to enter a final determination on the merits of these claims?

The final question with respect to "related to" jurisdiction is whether the court can issue a final determination on the merits. When a bankruptcy court hears a proceeding based on its "related to" jurisdiction, the court must submit proposed findings of fact and conclusions of law to the district court, unless all of the parties consent to the court's jurisdiction. 28 U.S.C. § 157(c). With the consent of the parties, the bankruptcy court may then hear and determine the proceeding and enter final orders and judgments. *Id.* Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil Procedure 12(b)-(i), requires that, "[a] responsive pleading shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court." In this case, not all of the parties have complied with Rule 7012(b) and, thus, there is some ambiguity regarding whether this court may enter a final order on the Defendants' motions to dismiss or whether it may only submit proposed findings of fact and conclusions of law to the district court.

In his Amended Complaint, Plaintiff consented to entry of a final order by the bankruptcy court. [Doc. No. 108, at ¶ 16]. SunTrust has also consented to the court entering a final order in its answer to the Amended Complaint. [Doc. No. 120, at ¶ 16]. In their responsive pleading, RCO Legal and Priority Trustee Services admitted allegations from the Amended Complaint regarding the court's jurisdiction and consent to entry of a final judgment [Doc. No. 115, at ¶¶ 16-18]. While not the affirmative statement contemplated by Rule 7012(b), the court cannot come to any other conclusion than that RCO and Priority have also consented to the court's entry of a final judgment.

However, despite having filed their respective answers and motions to dismiss, neither Seterus nor FNMA have filed a statement in compliance with Rule 7012(b). In their original

18

answers, Seterus and FNMA admitted that this court has jurisdiction over this matter. [Doc. No. 46, at ¶ 7; Doc. No. 48, at ¶ 7]. In this court's scheduling order, which was entered prior to Plaintiff's Amended Complaint, the court indicated that jurisdiction was not in dispute and that "[b]oth parties have agreed this is a core proceeding."[6] [Doc. No. 82, at 2]. However, despite these apparent indications of consent to the court's jurisdiction, in Seterus' and FNMA's motions to dismiss, they contest the court's subject matter jurisdiction.

Thus, the court is not clear whether Seterus and FNMA have consented to the court's entry of a final order in this case. A court always has jurisdiction to determine its jurisdiction. *Pactiv Corp. v. Chester*, 419 F. Supp. 2d 956, 958 n.1 (E.D. Mich. 2006). The court has determined that it has "arising in" jurisdiction over Count 1 and "related to" jurisdiction over Counts 2-6. However, because Seterus and FNMA have failed to file a statement in compliance with Rule 7012(b) and because there is some ambiguity in the record, the court must now have an answer as to whether they do or do not consent to this court's entry of a final order or judgment.

Accordingly, the court will require Seterus and FNMA to file with the court a statement in compliance with Rule 7012(b) within fourteen days of entry of this memorandum opinion. If the Defendants consent to entry of a final order by this court, then the court's order will become final fourteen days after its original entry unless an appeal or motion to reconsider is timely filed. *See* Fed. R. Bankr. P. 8002(a), 9023. If the Defendants do not consent to entry of a final order by this court, this opinion may be treated as proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1) and procedurally dealt with pursuant to Federal Rule of Bankruptcy Procedure 9033. The court will expressly extend the deadline in Rule 9033(b) for fourteen days

---

[6] The court acknowledges that the reference to "both" parties when there are multiple defendants is somewhat ambiguous. Seterus and FNMA, having already filed answers to Plaintiff's Amended Complaint, participated in the court's April 25, 2016 scheduling conference and were parties to the scheduling order.

to allow time for the Rule 7012(b) statements to be filed and for the parties thereafter to

determine whether they wish to file objections. Fed. R. Bankr. P. 9033(c).

### III.    Analysis

#### A.    *Standard of Review*

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil

Procedure 12(b) applies to adversary proceedings. Federal Rule of Civil Procedure 12(b)(6)

allows a party to move to dismiss a complaint for failure to state a claim upon which relief can

be granted. In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), a court must "treat as true all of the well-pleaded allegations of the complaint." *Bower*

*v. Federal Express Corp*., 96 F.3d 200, 203 (6th Cir. 1996). In addition, a court must construe all

allegations in the light most favorable to the plaintiff. *Id.* (citing *Sinay v. Lamson & Sessions*,

948 F.2d 1037, 1039 (6th Cir.1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955,

1969 (2007). The complaint "must contain either direct or inferential allegations respecting all

the material elements to sustain a recovery under some viable legal theory.*" Allard v. Weitzman*

*(In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quotation omitted).

The court will thus review the motion to dismiss by assuming the facts as alleged by

Plaintiff. In *Twombly* the Supreme Court emphasized that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of action will not do, ... Factual
> allegations must be enough to raise a right to relief above the speculative level, on

the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 127 S. Ct. at 1964-65 (citations omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (noting that "[a]lthough for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation").

In response to the court's request for additional briefing at the September 20, 2016 hearing on the motions to dismiss, Plaintiff filed a supplemental memorandum to which he attached a number of documents from the Texas Case: (1) the October 9, 2008 order confirming chapter 13 plan and valuing collateral; (2) the chapter 13 trustee's notice of final cure payment and motion to deem mortgage current; (3) a print out of the court's CM/ECF electronic filing docket from May 12, 2008 until August 24, 2013; (4) the order deeming the mortgage current and directing debtor to resume payments; (5) the discharge order; (6) the chapter 13 trustee's final report and account; and (7) the order closing case. [Doc No. 149, Ex. Nos. 1-7].

The Sixth Circuit has instructed lower courts that they must not consider matters beyond the complaint when resolving a motion to dismiss. *See Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576 (6th Cir. 2008). Therefore, the court will not consider the additional exhibits at this juncture.

### B.    *Plaintiff's Causes of Action*

Defendants argue that specific causes of action in the Amended Complaint should be dismissed for failure to state a claim. The court will address each cause of action separately.

#### 1.  *Count 1— Objection to Claim and to Determine Validity and/or Amount of Lien.*

Plaintiff's first cause of action is an Objection to Claim No. 2 filed by Seterus. [Doc. No. 108, at 21]. He objects to "the late charges, post-petition attorney fees, and the claim amount" in

the claim for $72,455.06 filed by Seterus. [*Id.*]. Plaintiff also requests that the court, pursuant to

Federal Rule of Bankruptcy Procedure 7001(2), "determine the validity and amount of the lien,

since the Defendants have not properly applied payments to Plaintiff's loan nor have they

provided an accurate accounting of said loan." [*Id.*].

<u>a. Count 1 as to Seterus</u>

Defendant Seterus argues that Plaintiff's Count 1 does not state a discrete legal claim.

[Doc. 121-1, at 9]. Seterus acknowledges that Federal Rule of Bankruptcy Procedure 7001(2)

authorizes a debtor to file an adversary proceeding "to determine the validity, priority, or extent

of a lien" in property. [*Id.*].  However, Seterus argues that Plaintiff's Amended Complaint "does

not challenge the secured status of the lien serviced by Seterus" but instead "acknowledges that

the lien is valid and that a debt is owed." [ *Id.*]  Seterus contends that the Amended Complaint

seeks only to determine the amount of Seterus' lien, thus taking it outside of the purview of Rule

7001(2), and thus failing to state a valid claim for relief.

As discussed in the prior section on jurisdiction, Seterus' argument ignores the use of the

word *extent* in Rule 7001. The extent of the lien is dependent upon the amount of the claim. For

purposes of this motion to dismiss, the court finds that Plaintiff has stated a claim.

Defendant Seterus also argues that Rule 7001(2) does not authorize a debtor to file an

adversary proceeding based on the allegation that the creditor failed to "provide an accurate

accounting," as alleged in the Amended Complaint. [*Id.* at 10 (quoting Doc. 108, at ¶ 115)].

Seterus contends that a claim for an accounting is a state law claim that is preempted by the

Bankruptcy Code. [*Id.* (citing *Pereira v. First North Am. Nat'l Bank*, 223 B.R. 28, 31-32 (N.D.

Ga. 1998))]. The plaintiff in the *Pereira* case sought an accounting in an action in which he had

specifically alleged a violation of section 524. He alleged that the defendant had collected money

pursuant to a reaffirmation agreement which the defendant had failed to file timely. The court

found that the statutory scheme provided in the Bankruptcy Code for violations of the discharge

injunction had pre-empted any state remedies for unjust enrichment and an accounting. *Pereira*,

223 B.R. at 31-32.

In the present case, the court has found that Plaintiff's causes of action, including his

claim for an accounting, are not based on a claim of violation of the discharge injunction.

Consequently, the bankruptcy scheme in place to address violations of the section 524 injunction

is inapplicable and *Pereira* is distinguishable. The court has found that Plaintiff's causes of

action accrued prepetition in this case and are property of the estate. His pursuit of an accounting

as a state court remedy is permissible, and the preemption analysis of *Pereira* does not apply.

The Defendants' motion to dismiss the claim for an accounting on preemption grounds is denied.

### b.  Count 1 as to FNMA

In its motion to dismiss, FNMA argues that the Amended Complaint "does not include

any factual allegations of unlawful conduct by Fannie Mae," but rather alleges actions taken by

only Seterus. [Doc. No. 122-1, at 1-2]. FNMA specifically contends that Count 1 should be

dismissed against it because it is merely an objection to a claim filed by Seterus. [*Id.* at 1].

Plaintiff responds that each count of the Amended Complaint alleges that FNMA is

responsible and liable "as a result of the actions and omissions of its agent and servicer, Seterus,

Inc." [Doc. No. 132, at 1]. In his Amended Complaint, Plaintiff alleges that FMMA is the

"present putative owner of the property." [Doc. No. 108, at ¶ 13].

Plaintiff is thus alleging that FNMA is liable as the principal for the actions of its agent,

Seterus. An agency relationship is one in which "one person acts for or represents another."

*White v. Revco Disc. Drug Ctrs.,* 33 S.W.3d 713, 723 (Tenn. 2000) (citation omitted). Tennessee

law recognizes that "a principal may be held vicariously liable for the negligent acts of its agent when the acts are within the actual or apparent scope of the agent's authority." *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 105 (Tenn. 2010) (citations omitted); *see also Cox v. M.A. Primary & Urgent Care Clinic*, 313 S.W.3d 240, 251 (Tenn. 2010). Whether an agency relationship exists "is a question of fact under the circumstance of the particular case and is determined by examining the agreement between the parties or the parties' actions." *Boren ex rel. Boren v. Weeks,* 251 S.W.3d 426, 432 (Tenn. 2008) (quoting *Revco*, 33 S.W.3d at 723) (internal quotations omitted)).

In this case, the Amended Complaint seeks relief on behalf of similarly situated individuals who successfully completed their Chapter 13 cases and "who have home mortgages owned by FNMA and serviced by Seterus." [Doc. No. 108, at ¶ 1]. In setting forth the factual allegations of the complaint, Plaintiff alleges that he received a letter from Seterus notifying him that "Seterus is now the servicer of Plaintiff's loan on behalf of Fannie Mae." [*Id.* at ¶ 32]. The Amended Complaint also alleges that Claim No. 2 was "filed by Seterus as the authorized sub servicer for Federal National Mortgage Association ("Fannie Mae") . . . ." [*Id.* at ¶ 114]. The complaint does not otherwise allege actions that were taken by FNMA specifically.

Construing these allegations in the light most favorable to Plaintiff, the court finds that Plaintiff has sufficiently alleged the existence of an agency relationship which would implicate FNMA as being vicariously liable for the actions of Seterus. Plaintiff has alleged that Seterus held itself out to him and to this court as an authorized servicer of a loan owned by FNMA.  If such an agency relationship in fact existed between Seterus and FNMA, barring some other defense, the latter could be held vicariously liable for the actions of the former.  Accordingly,

FNMA's motion to dismiss on the basis that the complaint alleges only unlawful actions taken

by its agent Seterus is denied.

> 2. *Count 2—Breach of Contract; Count 3— Intentional and Negligent Misrepresentation; Count 4—Negligence*

>> a. Counts 2-4 as to Seterus

Seterus contends that Plaintiff's claims for breach of contract, intentional and negligent

misrepresentation, and negligence are all part of Plaintiff's claims arising from violation of the

discharge order entered in the Texas Case and, as such, all are preempted by the Bankruptcy

Code and should be dismissed. [Doc. No. 121-1, at 10-11]. Seterus cites *Pertuso v. Ford Motor

Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000) and *Helman v. Udren Law Offices, P.C.*, 85 F.

Supp. 3d 1319, 1329 (S.D. Fla. 2014).   In *Pertuso*, the plaintiff was seeking to recover under

state law theories of unjust enrichment for funds that the creditor collected based on an invalid

reaffirmation agreement of an automobile loan. In addition to a request for an accounting, the

plaintiff also sought recovery under section 524 for violation of the discharge injunction. The

Sixth Circuit Court of Appeals found that there was no private cause of action for such a

violation and that the remaining state law claims "presuppose a violation of the Bankruptcy

Code." *Pertuso*, 233 F.3d at 426.

The Court finds *Pertuso* distinguishable. Because the debt in *Pertuso* was secured by

personal property, it was discharged in the earlier case. Thus, any attempt to collect the amounts

that were discharged was enjoined by section 524(a)(2). The present case involves long-term

debts that were maintained pursuant to 11 U.S.C. § 1322(b)(5). The debt was secured by a

mortgage on the debtor's principal residence and as such could not be altered in bankruptcy.

Such debt is not discharged under 11 U.S.C. § 1328(a)(1).  Therefore, Congress has not

expressed its intent to preempt the field of adjudicating claims that arise from torts or violations

of contract provisions or other applicable nonbankruptcy federal laws that occur after a debtor's

case is closed involving an obligation that was not discharged.

The *Helman* case is also distinguishable. Although that case involved a mortgage claim,

the debtor claimed her personal liability had been discharged, and the court analyzed her rights

under 11 U.S.C. § 524.  *See Helman*, 85 F. Supp. 3d at 1329-30. There is no indication in

*Helman* that the debtor cured her long-term mortgage debt through a chapter 13 plan or that her

personal liability was not discharged.

Because the court has concluded that Plaintiff is not seeking relief for violation of the

discharge injunction, his claims do not presuppose a violation of the Bankruptcy Code.

Plaintiff's causes of action for breach of contract, intentional and negligent misrepresentation,

and negligence are not preempted by the Bankruptcy Code and are not subject to dismissal on

that ground.

<u>b. Counts 2-4 as to FNMA</u>

FNMA also argues that Plaintiff's breach of contract, intentional and negligent

misrepresentation, and negligence claims should be dismissed against it because the Amended

Complaint does not allege actions taken by FNMA. [Doc. No. 122-1, at 1-2]. For example,

FNMA argues that because there is no allegation that it participated in the foreclosure activity,

any breach of contract claim based on the foreclosure fails to state a claim against it. [*Id.* at 2].

Likewise, FNMA contends that the intentional and negligent misrepresentation claim should be

dismissed because Plaintiff does not allege that FNMA sent him any correspondence, published

the foreclosure sale, or objected to confirmation of his chapter 13 plan. [*Id.*].  Finally, FNMA

argues that Plaintiff only alleges that Seterus was negligent in failing to properly correct its

accounting records. [*Id.*].  As previously discussed, the court finds that Plaintiff has sufficiently

alleged that Seterus was acting as FNMA's agent. As such, its acts on behalf of FNMA may be attributed to FNMA. Because the court has found that Plaintiff's state law claims in Counts 2-4 are not preempted as to its agent, the court will deny FNMA's motion to dismiss these counts as well.

### 3. Count 5—Failure to Credit Payments

#### a. Count 5 as to Seterus

Seterus contends that Count 5 should be dismissed due to "an absence of any factual allegations of unlawfully credited payments." [Doc. No. 121, at 2]. Plaintiff's claim in Count 5 is made pursuant to the Truth in Lending Act ("TILA"). 15 U.S.C. § 1639f, entitled "Requirement for prompt crediting of home loan payments," provides that:

> In connection with a consumer credit transaction secured by a consumer's principal dwelling, *no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt,* except when a delay in crediting does not result in any charge to the consumer….

15 U.S.C. § 1639f(a) (Emphasis added).

The court takes issue with Seterus' characterization of Count 5. The issue is not whether Seterus credited Plaintiff's payments in an unlawful manner. Plaintiff's problem with Seterus and FNMA is that they refused to credit payments at all when they were lawfully made. Seterus argues that Count 5 "does not reference or include a single factual allegation—it does nothing more than reproduce language from § 1639f." [Doc. No. 121-1, at 11]. Seterus also argues that the Amended Complaint fails to identify: (1) a payment that was not credited upon receipt; (2) a late charge that resulted from an untimely application of a payment; or (3) an unapplied payment that was unlawfully placed in suspense. [*Id.*].

Contrary to Seterus' arguments, Count 5 realleges and incorporates the prior 127 paragraphs of the Amended Complaint, which recite numerous payments made by

27

Plaintiff that were held, but not applied, because of Seterus' insistence that the obligation

was in default. [Doc. No. 108, at ¶ 128]. These instances are set out above in Part I of this

opinion, and the court included a chart detailing Plaintiff's repeated attempts from May to

August 2014 to receive credit for three payments. Plaintiff has alleged that his loan was

deemed current by an order of a bankruptcy court, that he made every payment after that,

and that Seterus as the servicer refused to acknowledge that the loan was current and

apply his payments. He has also alleged that "Seterus's failure to properly credit

payments to Plaintiff's account upon receipt resulted in additional late charges to the

Plaintiff." [Doc. No. 108, at ¶ 131]. Plaintiff has alleged that the amounts that Seterus

told him would cure his "defaults" ranged from $3,345.95 in October of 2013 to $7,000

as of August of 2014. [Doc. No. 108, at ¶¶ 32, 97].

From these alleged delays by Seterus in returning the checks and the changes in

the amounts demanded by Seterus, Plaintiff infers that Seterus made additional charges to

his account. Because the court finds that these allegations sufficiently state a claim for

failure to credit payments on the date that they were received and charges were made to

the account, the court will deny the motion to dismiss as to Seterus.

### b. Count 5 as to FNMA

FNMA argues that "Count 5 is alleged only against Seterus and SunTrust…." [Doc. No.

122, at 2]. Indeed, in the Amended Complaint, Plaintiff only refers to SunTrust and Seterus by

name although he does also use the term "Defendants," which is defined to include FNMA

earlier in the Amended Complaint. [Doc. No. 108, at 1, 23-24]. In his response, Plaintiff asserts

that he opposes the motion to dismiss and intended to assert a claim under TILA against FNMA.

[Doc. No. 133, at 7]. Based on this apparent confusion, the court will allow Plaintiff leave to

28

amend his complaint to clarify his intention with respect to Count 5 against FNMA. Plaintiff

shall file his amended complaint within fourteen days of entry of this memorandum opinion. The

court will provide FNMA with fourteen days to respond by supplementing its motion to dismiss,

and Plaintiff may have fourteen days in which to file a reply if necessary.

### 4. Count 6—Fair Debt Collections Practices Act

#### a. Count 6 as to Seterus

In its memorandum, Seterus only raises jurisdictional issues with respect to Plaintiff's

FDCPA claim [Doc. No. 121-1, at 8-9]. Seterus first argues that Plaintiff's FDCPA claim is

"based on the same factual allegations" offered in support of his discharge injunction violation

claim but that this "common factual nexus is not sufficient to establish jurisdiction in this Court."

[*Id.* at 8 (quoting *In re Marshall*, 491 B.R. 217, 228 (S.D. Ohio 2012))]. Seterus contends that

before exercising jurisdiction over Plaintiff's FDCPA claim, the court must invoke its "related

to" jurisdiction by determining whether the outcome of Plaintiff's FDCPA claim "could have

any conceivable effect on [his] bankruptcy estate." [*Id.* at 8 (quoting *In re Marshall*, 491 B.R. at

228)]. Seterus argues that because it is the only secured creditor in this case, any recovery on

Plaintiff's FDCPA claim will inure to the benefit of debtor and not the bankruptcy estate. [*Id.*].

The court has previously addressed each of these arguments in Part II of this opinion.

The court has determined that there is not a claim for a violation of the discharge injunction in

this case. *See supra* at 13-14. Therefore, *In re Marshall*, which involved a discharge injunction

violation in which the court declined to exercise "related to" jurisdiction over the plaintiff's

FDCPA claims, is distinguishable. *See In re Marshall*, 491 B.R. at 228-230, 234. The court has

also determined that it has "related to" jurisdiction over Plaintiff's FDCPA claim. *See supra* at

16-17. In doing so, the court determined that under the standard set out in *Waldman v. Stone*,

698 F.3d 910, 916 (6th Cir. 2012), Plaintiff's claims, including his FDCPA claim, will have an

effect on his bankruptcy estate. Because the court has previously determined that it has

jurisdiction to hear Plaintiff's FDCPA claim and because Seterus raises no other non-

jurisdictional grounds for dismissal of Count 6, the court will allow Count 6 to proceed against

Seterus.

<u>b. Count 6 as to FNMA</u>

FNMA argues the Amended Complaint does not include any factual allegations of

unlawful conduct by FNMA, and specifically argues that it is "not included among the defendant

"debt collectors" in Count 6. [Doc. No. 122, at 2].

In Plaintiff's response and memorandum to FNMA's motion to dismiss, he concedes that

Count 6 is not brought against FNMA.  [Doc. No. 132, at 1; Doc. No. 133, at 7].  Accordingly,

the court hereby GRANTS FNMA's motion to dismiss Count 6.

### C. *Nationwide Class Action*

 In addition to damages caused to him by the Defendants' actions, Mr. Cawood also seeks

to have this court certify two classes of plaintiffs pursuant to Federal Rule of Bankruptcy

Procedure 7023(b)(2) and (b)(3). [Doc. No. 108, at 2].  The first class is a Compensatory

Damage Class composed of:

> All persons: (1) who successfully completed a Chapter 13 in any of the United
> States Bankruptcy Courts within the period of time from October 17, 2005 to the
> date of class certification of this action and (2) who had a home mortgage with
> payments due Federal National Mortgage Association, (3) who had that mortgage
> being serviced by Seterus, Inc. and (4) who were subject to the actions of Federal
> National Mortgage Association and Seterus, Inc. in not complying with and
> recognizing the accounting of Chapter 13 trustees at the successful completion of
> their Chapter 13 plans.

[*Id.* at 3].

The second class is composed of the same persons, but the relief requested is to enjoin

the Defendants from failing to recognize the accounting of the chapter 13 trustees upon the

successful completion of their chapter 13 plans. [*Id.* at 3, 26]. Mr. Cawood seeks to pursue a nationwide class action suit and puts no additional geographic limitations on the former debtors he includes in his class. Therefore, this court must consider whether it has jurisdiction to hear not only the claims of this debtor but also the claims of a nationwide class of former debtors.

Seterus first argues that Mr. Cawood cannot advance the claims on behalf of a nationwide class because he has not stated a claim on his own behalf.[7] [Doc. No. 121-1, at 12; Doc. No. 135]. As set out above, the court has found that Mr. Cawood did state a claim for relief in his Amended Complaint. Therefore, that argument fails as a basis for dismissal of the class.

Second, Seterus reiterates its previous argument that Mr. Cawood cannot pursue a private cause of action for violations of the discharge injunction on behalf of a nationwide class because he himself does not have a private cause of action under section 524. [*Id.*]. Seterus argues that Plaintiff's only remedy is contempt and cites *In re Forson*, 549 B.R. 866, 870 (S.D. Ohio Mar. 31, 2016) and *In re Beck*, 283 B.R. 163, 175 (E.D. Penn. 2002) in support of its assertion that the court lacks subject matter jurisdiction over a nationwide class action to enforce the discharge injunction.

The court finds the Defendants' reliance on these cases misplaced.  Both of these cases are premised on the cause of action being a violation of the discharge injunction. Although the facts in *In re Forson* case are very similar to this case, the theory under which the case was brought was different.  The debtor had completed a chapter 13 case, but his creditor, Nationstar, had collected discharged fees, costs, arrearages and other charges and/or interest. *In re Forson*,

---

[7] FNMA did not separately brief the issues related to whether Plaintiff can pursue a nationwide class action. However, FNMA in its motion to dismiss that "to the extent the Court determines that any of the clams in the Amended Complaint are alleged against Fannie Mae, Fannie Mae incorporates by reference the pertinent provisions of the Memorandum of Authorities in Support Seterus' Motion to Dismiss." [Doc. No. 122, at 2].  FNMA also joined and adopted Seterus' Reply in Support of Its Motion to Dismiss. [Doc. No. 135].  Because the court has found that Plaintiff alleged claims against FNMA, it will treat FNMA as joining and adopting the arguments made by Seterus.

549 B.R. at 868. The debtor brought a class action suit seeking a finding of contempt and an award of compensatory and punitive damages for violation of the discharge injunction. *Id.* The court found there was no private cause of action for violation of the injunction imposed by 11 U.S.C. § 524(a). *Id.* at 869-70 (citing *In re Pertuso*, 233 F.3d at 423). The court also held that one bankruptcy court could not enforce injunctions issued by other courts across the country. *Id.* at 870 ("Thus, this court lacks jurisdiction over the claims of the Nationwide Class because otherwise it would be required to rule upon violations of discharges issued by other courts."). In contrast to Mr. Forson, Mr. Cawood does not request relief under section 524. He is pursuing prepetition claims in a second bankruptcy proceeding. As the court noted earlier, because his claims involve amounts owed pursuant to a first mortgage on his principal residence, the discharge injunction does not apply. Although a residential mortgage was involved in *In re Forson*, the issue of the applicability of section 524(a)(2) was not even discussed by the court. It appears that both parties assumed it was applicable and argued to the court accordingly. The *Forson* court noted that its ruling "merely limit[ed] the scope" of the class and that Federal Rule of Bankruptcy Procedure 7023 and Federal Rule of Civil Procedure 23 might still be applicable if the plaintiff continued to prosecute the case on a districtwide basis. *Id.* at 811.

In the second case cited by Seterus, *In re Beck*, 283 B.R. 163 (E.D. Pa. 2002), the court addressed a creditor's motion to dismiss a debtor's request for a nationwide debtor class. The Becks had filed a chapter 7 case, and the claim arose from an automobile lease that was not reaffirmed. That debt, unlike a long-term residential mortgage obligation, was discharged in the chapter 7 proceeding. Nevertheless, the lease creditor attempted to collect its debt after the discharge had been granted. The court determined that the issue presented was whether it had authority to hold the creditor in contempt for violation of section 524(a) discharge injunctions

32

issued not only by the court itself but by bankruptcy courts nationwide. *Id.* at 166. The court

found that the plaintiff's remedy was limited to enforcement of the discharge order through a

contempt proceeding. *Id.* at 173-74. The debtor attempted to distinguish a statutory discharge

order based on an official form rather than one "crafted by the court," to justify the court

ignoring the general rule that the court that issued an order should be the only court to enforce it.

*Id.* at 171. The *Beck* court was not persuaded by that distinction and concluded that it did not

have the right to enforce the discharge injunctions issued by other courts nationwide. *Id.* at 174.

It deferred ruling on whether it could enforce any discharge order within its district. *Id.* at 175.

Like in *In re Forson*, the applicability of section 524 was not at issue in *In re Beck*. The

debtor did not raise any other basis for his claims other than violation of the discharge injunction.

In the present case, whatever causes of action Mr. Cawood has, they are not claims for damages

sustained because of violations of the discharge injunction imposed by 11 U.S.C. § 524(a)(2). As

such, the court does not find the holdings in these cases determinative of the issue of whether the

court may hear a nationwide class action.

For these reasons the court denies Seterus' and FNMA's request to dismiss Plaintiff's

request for nationwide class certification on the two bases cited in their motion. The court will

not take the next step and conclude that it has jurisdiction over a nationwide class. The cases

cited by Plaintiff are not determinative of that issue as these cases involved certification of

classes limited to the district in which the debtor had filed. [*See* Doc. No. 133, at 9 (citing

*Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 695 F.3d 360 (5th Cir. 2012);

*Brannan v. Wells Fargo Home Mortg., Inc. (In re Brannan)*, 2013 WL 85158 (Bankr. S.D. Ala.

Jan. 8, 2013); *Wilborn v. Wells Fargo Bank (In re Wilborn)*, 609 F.3d 748 (5th Cir. 2010))]. At

oral argument, Plaintiff's counsel mentioned *Sims v. Capital One Financial Corporation (In re*

*Sims)*, 278 B.R. 457 (Bankr. E.D. Tenn. 2002), as authority for the proposition that if he could

show this case is representative of a nationwide problem, this court would have "a right to fix it."

[Argument of Richard Banks, Sept. 20, 2016, at 11:19:50]. In *Sims*, the court certified a

nationwide class to address debtors' claims involving a "substantive bankruptcy right," rather

than state law or nonbankruptcy federal law. *Id.* at 487. Whether Plaintiff can demonstrate that

the issues presented in this case are a nationwide problem that implicates a substantive

bankruptcy right remains to be seen. The court concludes that a final determination of Plaintiff's

ability to bring such an action would be more appropriately made in the context of a motion for

class certification at which time Plaintiff would be required to show whether the alleged

accounting failure is a singular or widespread problem. *See Padilla v. GMAC Mortg. Corp.*, 389

B.R. 409, 446-47 (Bankr. E.D. Pa. 2008) ("It will become necessary to determine the

jurisdictional propriety of certifying a class of former bankruptcy debtors only if the Debtor

establishes that a number of other requirements for class certification exist, including

numerosity, commonality and typicality.").

## V.     Conclusion

Based on the foregoing, the court will DENY the motion to dismiss filed by Seterus.

[Doc. No. 121]. The court will GRANT in part and DENY in part the motion to dismiss filed by

FNMA to the extent that it will dismiss Count 6 of the Amended Complaint against FNMA.

[Doc. No. 122]. The court will also grant Plaintiff leave to amend his complaint with respect to

Count 5 to indicate whether he intends to allege that cause of action against FNMA. Plaintiff

shall file his amended complaint within fourteen days of entry of this memorandum opinion.

The court will provide FNMA with fourteen days to respond by supplementing its motion to

dismiss, and Plaintiff may have fourteen days in which to file a reply if necessary.

Because neither Seterus nor FNMA has filed a statement with the court in compliance with Rule 7012(b) indicating whether they consent to the court's entry of a final order, the court hereby ORDERS the Defendants to do so within fourteen days of entry of this memorandum opinion. If the Defendants consent to entry of a final order by this court, then the court's order accompanying this memorandum opinion will become final fourteen days after its original entry unless an appeal or motion to reconsider is timely filed. *See* Fed. R. Bankr. P. 8002(a), 9023. If the Defendants do not consent to entry of a final order by this court, this opinion may be treated as proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1) and procedurally dealt with pursuant to Federal Rule of Bankruptcy Procedure 9033. The court will expressly extend the deadline in Rule 9033(b) for fourteen days to allow time for the Rule 7012(b) statements to be filed and for the parties thereafter to determine whether they wish to file objections. Fed. R. Bankr. P. 9033(c).

A separate order will enter.

###